# Cleveland Woolen Mills *v.* Sibert, Ward & Co.

### *Trover by Vendor against Sub-purchaser of Goods.*

1. *General notoriety as evidence.*—Proof of the notoriety of a fact in the community in which a party resides, is admissible as evidence, for the purpose of showing notice to him; but other evidence of the existence of the fact must be adduced, and its relevancy and materiality must also be shown.

2. *Acts or declarations of agent  as evidence against principal.*—A letter written by an agent, within the scope of his agency, and in the execution of his duties, explanatory of a contemporaneous act, is admissible as evidence against his principal.

3. *Fraudulent purchase of goods; rights of vendor against sub-purchaser.*—When an insolvent purchaser obtains goods on credit by fraud, the seller may, on discovery of the fraud, disaffirm the contract, and recover the goods, unless they have passed into the hands of a sub-purchaser for value without notice of the fraud; and in an action against a sub-purchaser, a charge which instructs the jury, in effect, that the plaintiff can not recover unless the defendant had *knowledge* of the fraud, is erroneous, knowledge and notice not being equivalent or synonymous terms.

APPEAL from the Circuit Court of Etowah.

Tried before the Hon. JAMES AIKEN.

This was an action of trover by the appellant, the " Cleveland Woolen Mills," a corporation engaged in manufacturing at Cleveland, Tenn., against the appellees, William J. Sibert, J. R. Ward and A. J. Blair, partners doing business at Gadsden, Ala., under the name of Sibert, Ward & Co., for the alleged conversion of twenty pieces of jeans. The plea was "not guilty."

On the trial, Charles Hawkins, a witness for the plaintiff, testified, that in December, 1884, he, being a retail merchant at Gadsden, Ala., ordered the goods mentioned in the complaint, from the plaintiff, who, on the advice of Moore, Marsh & Co., agents for the sale of plaintiff's goods in Alabama, declined to sell to witness except for cash; that he finally procured the goods from plaintiff at 33 cents per yard, on sending them his check for the price on the Bank of Gadsden; that he had never paid the check, and had no funds in the bank at the time he drew it, and no authority from the bank to draw it, and that he was then and at the time of the trial, insolvent and unable to pay his debts, and the goods had never been paid for. This witness further

[Cleveland Woolen Mills v. Sibert, Ward & Co.]

testified, that, having a draft for $100 against him due at the Bank of Gadsden, he proposed to Sibert, one of the defendants, who were merchants at Gadsden, to sell defendants the jeans to raise the money to meet said draft, informing him of his object in selling the jeans, and that he expected the goods to be attached; that Sibert told witness that if he bought the goods, he would have to do so at a low price on account of the risk, and went with witness to look at the goods, which were in the back room of witness' store, covered up with paper and boxes; that when they reached witness' store, witness' wife and Capt. J. L. Cunningham were in said back room, and Sibert waited in the front room of the store until witness had invited these parties out of the back room, and then entered and examined the goods with witness; that Sibert then went after A. J. Blair, another of defendants, and returning with him, they, after examination, bought the goods from witness at 20 cents per yard, and told witness to send them by the back street up to the side of defendant's store, and when the drayman, Willie Millsaps, came up for the goods, either witness, Sibert or Blair, told said drayman how to carry the goods, and to cover them up so that they could not be seen. On cross-examination by defendants, Hawkins testified, that before he came to Gadsden he had been convicted of forgery in Arkansas, sentenced to the penitentiary of that State, and pardoned on condition of leaving the State and never returning.

Capt. J. L. Cunningham and the drayman, Willie Millsaps, being introduced as witnesses by the plaintiff, corroborated the testimony of Hawkins in so far as it related to them; the latter testifying, that to the best of his recollection, it was defendant Blair who directed him to carry the goods covered up and on the back street, and that it was much nearer by the front than the back street. There was other evidence on the part of the plaintiff, showing Hawkins' insolvency, and that he purchased the goods from the plaintiff in the manner and on the terms testified to by him.

The defendants then introduced as witnesses said W. J Sibert and A. J. Blair, the former of whom denied Hawkins' and Cunningham's testimony as to Hawkins having invited Mrs. Hawkins and Cunningham out of the back room before showing the goods to him, and both of whom denied that Hawkins said anything to them about the danger of the goods being attached, and that they directed the goods to be covered up and carried to their store by the back street. They testified that they bought the goods from Hawkins, as stated by him, at 20 cents per yard, but said nothing to

him about buying them low on account of the risk. Sibert testified that at the time he and Blair bought the goods, he saw the brand of plaintiff on them, and at that time he knew the general character of Hawkins in Gadsden, and it was bad. The plaintiff then asked the witness if it was not generally known in Gadsden, about the time of defendant's purchase of the goods from Hawkins, that Hawkins was a common mercantile swindler.

The court, on the objection of the defendants, refused to allow this question, and the plaintiff excepted.

A. J. Blair testified, that at the time of the purchase, he knew the market value of such goods to be between 30 and 35 cents per yard, and that the purchase from Hawkins, who was at the time a retail merchant, was out of the regular course of business, and that he knew Hawkins' general character at that time, and it was bad.

The defendants then offered in evidence two letters to Hawkins from Moore, Marsh & Co., agents of plaintiff for the sale of plaintiff's goods in Alabama, containing a bill of the goods, advising Hawkins of their shipment from the factory, and expressing the hope that Hawkins would have his check paid. The plaintiff objected to each of these letters separately, the court overruled each objection, and the plaintiff excepted separately to the admission of each letter.

The court, at the request, in writing, of the defendants, gave the following charges, to the giving of each of which, the plaintiff separately excepted :

1. "Although the evidence may satisfy the jury, that Hawkins obtained the goods from plaintiff without the intention of paying for them, yet if Sibert, Ward & Co. bought the goods and paid a valuable consideration for them in good faith and without notice of Hawkins' fraud, the verdict must be for the defendants."

2. "It will make no difference under the facts of this case, whether Hawkins acquired the jeans by fraud or not, if the jury believe from the evidence, that after the purchase by Hawkins, he sold them to Sibert, Ward & Co. for value before plaintiff took any steps to disaffirm the sale to Hawkins, and that Sibert, Ward & Co. had no *knowledge* of the fraud of Hawkins in the purchase of the goods."

3. "In ascertaining whether the facts and circumstances were sufficient to put Sibert, Ward & Co. on inquiry, the jury will only look to the facts and circumstances as are shown by the evidence to have been known to them, or some one of them, at the time of the purchase."

4. "In determining the question of good faith *vel non*, on

[Cleveland Woolen Mills v. Sibert, Ward & Co ]

the part of Sibert, Ward & Co., in their purchase from Hawkins, the jury are to look to the facts and circumstances as they are shown by the evidence to have been known by them or some one of them, at the time of the purchase."

5. "If the jury believe from the evidence, that Sibert, Ward & Co. bought the jeans from Hawkins and paid him for it, the fact that the jeans were sold for less than cost is only a circumstance for the consideration of the jury in connection with all the other evidence ; and, if the jury believe from the evidence, that they bought the goods from Hawkins in good faith, relying on his statement that he had to raise money to meet paper in bank as a reason for making the sale, and paid him for the goods without notice of the manner of Hawkins' purchase, then the verdict will be for the defendants."

6. "The mere fact that the goods had on them the factory brand, was not sufficient to charge the defendants with notice of the purchase of Hawkins from the plaintiff."

7. "If the jury believe from the evidence, that Sibert, Ward & Co. paid 20 cents a yard for the jeans, this was a valuable consideration and will cast the burden on the plaintiff to show that Sibert, Ward & Co. knew of Hawkins' fraud, or had notice of such circumstances and facts as to put them on inquiry."

W. H. DENSON, for appellant.—1. Hawkins' purchase was fraudulent and appellant could rescind the sale.—*Spira v. Hornthall et al.*, 77 Ala. 137 ; *McCormick et al. v. Joseph et al.*, *Ib.* 236 ; *Loeb & Bro. v. Flash Bros.*, 65 *Ib.* 526 ; *Thurston v. Blanchard*, 33 Am. Dec. 700 ; *Rowley v. Bigelow*, 23 Am. Dec. 607 ; *Corn v. Devlin*, 141 Mass. 423. The giving the check under the circumstances was a fraud.—*City National Bank v. Burns*, 68 Ala. 278 ; 5 Wait's Ac's & Def's, 583. 2. The charge *number two*, given for appellees, was erroneous. *Knowledge* is not the same thing as *notice.*—*Martin v. Br. Bk. at Decatur*, 31 Ala. 115 ; *Ledbetter v. Walker*, *Ib.* 177 ; Wade on Notice, § 3 ; 2 Pom. Eq., § 592 ; *Hodges Bros. v. Coleman et al.*, 76 Ala. 104; *Loeb & Bro. v. Flash Bros., supra.* 3. The court erred in excluding the question as to Hawkins being known as a common mercantile swindler.—*Hodges Bros. v. Coleman, supra.* The letters should have been excluded ; they were *res inter alios acta.*

DUNLAP & DORTCH, *contra.*—The second charge was free from error. The words *knowledge* and *notice*, when used in a charge, mean the same thing. If the charge was misleading, an explanatory charge should have been asked. The

question as to its being known that Hawkins was a common mercantile swindler, was properly excluded. There was no proof of the fact that he was such swindler, and such fact, if offered to be proved, was incompetent evidence. Notoriety of a fact not proven, and, if proven, inadmissible, was not proper to be admitted in evidence.—76 Ala. 114 ; 1 Brick. 616 and 617.

CLOPTON, J.—The appellant, having disaffirmed, on alleged misrepresentation and fraudulent concealment, a sale of goods made in December, 1884, to Charles Hawkins, a retail merchant, brings trover against appellees, who purchased some of the goods from Hawkins. On the trial, the plaintiff offered to prove, that about the time the defendants purchased the goods, it was generally known in Gadsden, where they and Hawkins resided, that he was a common mercantile swindler. While proof of notoriety of a fact in a community in which a party resides is admissible, for the purpose of bringing home to such party notice thereof, the materiality and relevancy of the particular fact, and *prima facie* evidence of its existence, other than general reputation, are preliminary and requisite. The plaintiff had the benefit of proof of Hawkins' bad reputation. While his conviction of forgery in Arkansas, his pardon on condition that he would leave the State, and his bad reputation materially affect his character for honesty, and his credibility as a witness, they do not establish the *particular* fact, that he was a common mercantile swindler. If it were conceded, that such fact is relevant to the issues tried, and that proof of it is competent, which we do not decide, in the absence of such proof, evidence that it was generally known is inadmissible.

There is no error in admitting the letters of Moore, Marsh & Co. to Hawkins. They were the agents of plaintiff for the sale of goods in Alabama, to whom his application to purchase was referred. The letters are declarations explanatory of a cotemporaneous act within the scope of their agency, and being written while engaged in its execution form part of the *res gestae*.

There does not seem to be any serious controversy in respect to the fraud of Hawkins in obtaining the goods from plaintiff. The main contention is, whether the defendants are *bone fide* purchasers without notice of the fraud. On this issue, the court, at the instance of defendants, instructed the jury, that under the facts in this case, it made no difference whether or not Hawkins acquired the goods by fraud, if they believe from the evidence, that after

[Cleveland Woolen Mills v. Sibert, Ward & Co.]

his purchase he sold them to defendants before plaintiff took any steps to disaffirm the sale, and that defendants had no *knowledge* of the fraud of Hawkins in the purchase of the goods. The general rule is not controverted, that a purchaser from a fraudulent vendee, for value and without notice of the fraud, will be protected against the right and equity of the original vendor to disaffirm the sale, and reclaim the property; but the question raised is, whether in the sense of the rule, *knowledge* and *notice* are equivalent and synonymous? Notice may be generally classified into actual and constructive. The diversity of opinion which exists as to the particular kinds of notice, that comes within each of these classes, is not of practical importance. For the legal and practical purposes of the generality of cases, the classification may be regarded as most simple, and easy of application, that notice is actual, when there is positive information of a fact, and constructive, when the information is either conclusively or *prima facie* presumed from certain existing facts; when not conclusive, being strictly implied or inferred notice. Conclusive constructive notice allows no proof of want of information; but when implied, the presumption may be rebutted; either, when established, having the same legal effect.

Knowledge may also be classified, in a legal sense, as positive and imputed—imputed, when the means of knowledge exist, known and accessible to the party, and capable of communicating positive information. When there is knowledge, notice, as legally and technically understood, becomes immaterial. It is only material when, in the absence of knowledge, it produces the same results. However closely actual notice may, in many instances, approximate knowledge, and constructive notice may be its equivalent in effect, there may be actual notice without knowledge; and when constructive notice is made the test to determine priorities of right, it may fall far short of knowledge, and be sufficient. When the purpose is to subordinate to a prior existing equity or right in another, the subsequently acquired right of a party, who has information of collateral facts, sufficient to put him on inquiry, which if pursued would lead to the truth, such information is regarded as sufficient to charge him with notice of the ultimate fact, but is not tantamount to either knowledge or express notice, nor is either a necessary inference.—Wade Law Not. §§ 3, 10, 36a; 2 Pom. Eq. Jur. §§ 592, 593.

When a party sets up, in equity, the defense of being a *bona fide* purchaser without notice, he is required to deny, not merely knowledge, but notice of the main fact, and all

10

the facts and circumstances charged from which it may be inferred. In such case, " there is a difference between the want of *knowledge* and the want of *notice*." The party may have been notified without being made to know the prior right.—*Ledbetter v. Walker*, 31 Ala. 177 ; *May v. Chapman*, 16 M. & W. 355. In 2 Pom. Eq. Jur. § 594, the learned author thus defines notice : " Within the meaning of the rules, notice may, I think, be correctly defined as the *information concerning a fact* actually communicated to a party by an authorized person, or actually derived by him from a proper source, or else presumed by law to have been acquired by him, which information is regarded as equivalent *in its* legal *effects* to full knowledge of the fact, and to which the law attributes the same consequences as would be imputed to knowledge. It should be most carefully observed that the notice thus defined is not knowledge, nor does it assume that knowledge necessarily results." To overcome the defense of *bona fide* purchasers without notice, the plaintiff is not required to prove that the defendants had *knowledge* of the fraud of Hawkins ; yet the jury must have so understood the charge. Whether knowledge, as employed in the instruction, is construed as ordinarily used, or in its legal meaning as distinguished from notice, the inquiry of the jury was restricted to narrower limits than authorized by the rule. The circumstances, if any were proved, from which notice of the fraud might have been implied, were excluded from the inquiry.

Though knowledge of the *fraud* of Hawkins in the purchase of the goods is not requisite, notice thereof to be implied must have knowledge as its source and basis. The mere existence of collateral facts and circumstances sufficient to put the defendants on inquiry, and from which notice can not be conclusively presumed, is not enough. It should be shown that the defendants had *information* of such facts and circumstances. The other charges on the subject of implied notice were in harmony with this view, and with the general rule.

We discover no error in the record other than the one mentioned.

Reversed and remanded.