(76 South. 988)

### ALBANY WAREHOUSE CO. v. F. B. FISK COTTON CO. (3 Div. 208.)

(Court of Appeals of Alabama. June 30, 1917. Rehearing Denied Nov. 13, 1917.)

1. PRINCIPAL AND AGENT ☞24—EXISTENCE OF AGENCY—QUESTION FOR JURY.

Evidence in action to recover for cotton sold by plaintiff to T. *held* sufficient to go to the jury on the issue of T. having been defendant's agent in the purchase.

2. SALES ☞245—COTTON—PLACE OF RESALE—TITLE—QUESTION FOR JURY.

Evidence in action to recover for cotton sold by plaintiff to T. in Georgia for cash, but not paid for, so that under Civ. Code Ga. 1910, § 4126, title did not pass, *held* sufficient to go to the jury on the issue of T. having resold to defendant in that state, so as to render defendant liable to plaintiff therefor.

3. SALES ☞234(1)—COTTON—PLACE OF RESALE—LIABILITY TO ORIGINAL SELLER.

If T., having in Georgia purchased cotton from plaintiff, for cash, but without paying for it, so that under Civ. Code Ga. 1910, § 4126, title did not pass, resold in that state to defendant, and it was there stored as the property of defendant, and it was there intended as between defendant and T. that title should pass to defendant when so stored, the transaction is governed by the laws of Georgia, and defendant is liable to plaintiff.

4. SALES ☞234(1)—COTTON—PLACE OF RESALE—LIABILITY TO ORIGINAL SELLER.

If cotton purchased by T. for himself of plaintiff in Georgia, for cash, but without paying for it, so that under Civ. Code Ga. 1910, § 4126, title did not pass, was shipped as T.'s property, to Alabama, and draft drawn with bill of lading attached, and it was the intention of T. and defendant that defendant should not acquire title till draft was paid, and defendant paid it in Alabama, without knowledge or notice that T. had not acquired title, the transaction would be governed by the laws of Alabama, and defendant would not be liable to plaintiff.

5. SALES ☞221—PURCHASE—LACK OF TITLE—KNOWLEDGE OR NOTICE.

One purchasing and paying for cotton with knowledge or notice that the seller is not the owner, and in disregard of the owner, and in disregard of the owner's rights, is liable to the owner as for a conversion.

6. PRINCIPAL AND AGENT ☞189(4)—PURCHASE BY AGENT—RECOVERY AGAINST PRINCIPAL—PLEADING AND EVIDENCE.

T. having been the agent of defendant in the purchase of cotton from plaintiff, it is not necessary for recovery from defendant to show that it had disposed of the cotton and converted it into money; there being a count for goods sold.

7. TRIAL ☞158—SUFFICIENCY OF EVIDENCE—MODE OF TESTING.

Sufficiency of plaintiff's evidence may not be tested by motion to exclude all of it.

Appeal from Circuit Court, Montgomery County; W. W. Pearson, Judge.

Action by the Albany Warehouse Company against the F. B. Fisk Cotton Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Ball & Samford, of Montgomery, for appellant. Horace Stringfellow and Steiner, Crum & Weil, all of Montgomery, for appellee.

PER CURIAM. This is the second appeal in this case, the first appeal being from the judgment of the trial court sustaining a demurrer to the complaint, consisting of one count. On that appeal it was held that, if the cotton was sold by the plaintiff, a commission merchant, to S. H. Tift for cash, and Tift, without paying the purchase price, resold it to the defendant, and the sale took place in the state of Georgia, defendant's liability would be tested by the laws of that state. Albany Warehouse Co. v. F. B. Fisk Cotton Co., 12 Ala. App. 527, 67 South. 728.

After the remandment of the case to the circuit court, the complaint was amended by adding counts 2, 3, 4, and 5. Counts 1 and 2 are special counts for money had and received, and the others are the common counts, on account, on account stated, and on account for merchandise, goods, and chattels sold by the plaintiff to the defendant. Count 1 was withdrawn, and the case proceeded to trial on the other counts and the plea of the general issue. At the conclusion of the plaintiff's evidence the defendant, without offering any proof, made a motion to exclude all the plaintiff's evidence, and the court granted this motion, and at the defendant's request gave the affirmative charge in its favor.

The contentions of the appellee are: (1) that there is no evidence tending to show that the defendant received the eleven bales of cotton in controversy; (2) and, if there is evidence tending to show this fact, it is not shown that the defendant has disposed of it so as to authorize the plaintiff to sue for money had and received; and (3) that the undisputed evidence shows that Tift was an independent dealer and purchased the cotton in the state of Georgia and shipped it into Alabama, and here sold it to the defendant, who paid Tift for it without notice or knowledge of plaintiff's claim thereto.

The evidence shows without dispute that the 11 bales of cotton in controversy were sold by the plaintiff to Tift, and at his request delivered to the compress company about September 22, 1911, that the sale was for cash, and that Tift had not paid for the cotton. The evidence is also without conflict

that the defendant purchased through or from Tift during that season 2,781 bales. The witness F. B. Fisk testified:

"That he was president and treasurer and owned most of the stock of F. B. Fisk Cotton Company in the fall of 1911; that Tift was simply a correspondent of the company; that it had numerous correspondents; that it did not furnish money to him to buy cotton; that it did have correspondence with him during that period and with the bank over there; that he never gave authority to anybody to be an agent of the company; that the company did not have any correspondence in 1911 with Tift except relating to probable purchases from him; that the company confirmed all the purchases made from him by mail and telegrams generally; that his whole business was done through correspondents; that the company had no specific understanding with correspondents that all cotton bought by him should be sold to Fisk Cotton Company; that he had a record of every bale of cotton bought in 1911 at Albany from Mr. Tift; that he believed it was 2,781 bales; that Mr. Tift handled the cotton for Fisk Cotton Company; that it bought from Tift in September in Albany, and shipped it under instructions from Fisk Cotton Company, given over the phone or by letter from Montgomery; that Mr. Tift himself shipped the cotton out under the company's instructions; that he shipped the cotton on instructions over the phone, he supposed, or by letter. * * * You see we had to give him instructions, if you will allow me to tell you; * * * practically f. o. b. there, with bill of lading attached. He had to draw on me, and I was to give him instructions promptly, because he didn't have the money to do the business over there. * * * And, if I didn't do that, I allowed him to draw on me with compress receipts attached. That is why he drew on us for the 181 bales. That is why we had the 181 bales over there, is because we couldn't move it out promptly, and we allowed him to do it. We didn't have any place for it and he wanted his money. He drew on us with the compress receipts attached, and we paid his draft."

The witness further testified:

That the 181 bales is the only cotton, according to his recollection, that defendant sent a man to Albany to ship; that the rest was shipped by Tift for defendant; that Tift did the grading and shipping, and the defendant did the paying. "We didn't pay his draft unless he had his invoice with it. We only obligated ourselves to pay his draft with the invoice of the amount of cotton, and those were attached, and we got his invoice before we paid his draft."

Wilder, another witness, testified:

"All the cotton sold by Albany Warehouse Company to said Tift during September, 1911, was delivered to the Atlantic Compress Company for the Fisk Cotton Company; that such was the fact of all that season up to some time in November; that some time in December, 1911, witness went to the compress to see whether said 11 bales of cotton were still stored, and there found that they were not, but they had been shipped."

Champion, another witness, testified:

That he was a cotton salesman for the plaintiff, and "I know W. B. Fisk, of Montgomery, Ala. * * * He came to the warehouse in company with Mr. Tift either in August or September, 1911. On several visits that Mr. Fisk made to the warehouse with Mr. Tift he constantly urged me to sell Mr. Tift cotton, and made the impression on me that Mr. Tift was representing Fisk Cotton Company. * * * The Albany Warehouse Company * * * did sell cotton to S. H. Tift during the fall of 1911. The terms of the sale were cash. The

16 ALA. APP.—17

cotton was the property of the Fisk Cotton Company."

This testimony also appears in the record:

"These 11 bales have not been paid for by Tift or any one else. These 11 bales of cotton were delivered to said Tift in the state of Georgia in Albany, Ga., at the Atlantic Compress Company. * * * I do not know that Tift sold this cotton to the F. B. Fisk Cotton Company. An examination of the records at the compress showed me that all the cotton delivered there for Tift between September 21, 1911, and the date when the records of the office of said Tift were audited by the representative of the Fisk Cotton Company, Mr. T. B. Fisk, on or about November 10, 1911, had either been shipped out compressed to the said Fisk Cotton Company at the ports of Savannah and Brunswick, Ga., or were shipped out flat by said T. B. Fisk to F. B. Fisk Cotton Company at Montgomery, Ala. The number of bales shipped by T. B. Fisk to Montgomery, Ala., was about 181 bales. I know that for several days prior to the visit of Mr. T. B. Fisk the said S. H. Tift was out of the market, and that he did not go into the market again until after this visit."

[1, 2] After a careful review of the evidence, we hold that some of its tendencies required the submission of the issues to the jury. The evidence quoted authorized the jury to draw an inference that the 11 bales of cotton in controversy were received by the defendant, and that Tift was acting as the agent of the defendant in purchasing and handling the cotton purchased from the plaintiff. If Tift was not the agent of the defendant, but was an independent dealer purchasing on his own responsibility, it was also a question for the jury whether he purchased the cotton and resold it to the defendant in the state of Georgia. If the jury found this to be a fact, and the arrangement between the defendant and Tift was such that the title to the cotton (if it had been paid for by Tift) would have passed to the defendant in the state of Georgia, and it was so intended as between Tift and the defendant, the defendant would be liable, under the Georgia statute then in force, which provides:

"Cotton, corn, rice, crude turpentine, spirits of turpentine, rosin, pitch, tar, or other products sold by planters and commission merchants, on cash sale, shall not be considered as the property of the buyer until fully paid for, although it may have been delivered to the buyer: Provided, that in cases where the whole or any part of the property has been delivered to. the buyer, the right of the seller to collect the purchase money shall not be affected by its subsequent loss or destruction." Civil Code Ga. 1910, § 4126.

See Savannah C. R. A. v. MacIntyre, 92 Ga. 166, 17 S. E. 1023.

[3] We restate the proposition: Although Tift purchased the cotton from plaintiff on his own responsibility, for cash, and failed to pay for it, and without acquiring title to the cotton resold it to the defendant in the state of Georgia, and it was there stored with the compress company as the property of the defendant, and it was intended as between the defendant and Tift that the title of the property should pass to defendant when so stored, the transaction in contemplation of law would be governed by the

laws of Georgia, and the defendant would be liable.

[4] If, on the other hand, the cotton was purchased by Tift on his own responsibility, and not as an agent of defendant, and was shipped out of the state of Georgia into Alabama, or elsewhere, as Tift's cotton, and draft drawn with bill of lading attached, and it was the intention of the parties that the defendant should not acquire title until the draft was paid, and defendant paid the draft outside of the state of Georgia, without notice or knowledge that Tift had not acquired title to the cotton, the defendant would not be liable. Comer v. Cunningham, 77 N. Y. 391, 33 Am. Rep. 626; Jones v. Brewer, 79 Ala. 546; McCormack v. Joseph, 77 Ala. 236; Bank v. Henderson, 123 Ala. 614, 26 South. 498, 82 Am. St. Rep. 147; Veitch v. Atkins Grocery Co., 5 Ala. App. 444, 59 South. 746.

[5] On the other hand, if the defendant had knowledge of the fact that Tift was not the owner of the cotton when the drafts were paid, or was in possession of such facts as would excite inquiry, which if followed up would have brought knowledge to it that Tift was not the owner of the cotton, and purchased it or dealt with it in disregard of the rights of the true owner, it would be liable as for a conversion. Bolling v. Kirby Bros., 90 Ala. 215, 7 South. 914, 24 Am. St. Rep. 789; Cleveland Woolen Mills v. Sibert, 81 Ala. 140, 1 South. 773.

The fact that differentiates this case from Farmers' & Merchants' Nat. Bank v. Logan, 74 N. Y. 568, and Dows v. Nat. Bank, 91 U. S. 618, 23 L. Ed. 214, cited in appellant's brief on rehearing, is: In those cases the title passed to and vested in the "commercial correspondent," while in this case, under the undisputed evidence, Tift never acquired the title to the 11 bales of cotton in controversy.

[6] On the phases of the evidence tending to show that Tift was the agent of the defendant in the purchase of the cotton, it was not incumbent on the plaintiff to show that the defendant had disposed of the cotton and converted it into money. If this theory prevailed, the plaintiff was entitled to recover under the third and fifth counts of the complaint.

[7] The court erred in granting the motion to exclude all the plaintiff's evidence (Stewart Bros. v. Ransom, 200 Ala. 304, 76 South.

70), and also in giving the affirmative charge for the defendant.

Reversed and remanded.

SAMFORD, J., not sitting, having been of counsel.