MERRIMACK MANUFACTURING COMPANY *vs.* EDWARD A. QUINTARD & others.

In an action to recover damages for failure to deliver seasonably goods sold by the defendants to the plaintiffs, it appeared that, when the time agreed upon for the delivery of the goods was so nearly expired that it was evident that they could not be delivered within it, the defendants asked the plaintiffs whether they would receive the goods after ward, and the plaintiffs replied that they not only would consent to, but insisted upon, the delivery. The plaintiffs introduced evidence tending to show that they then said that they would claim damages for any increase in the cost of the goods, produced by any advance in freights or insurance. The defendants introduced evidence tending to contradict this, and to show that the plaintiffs waived any objection on the ground of tne delay. The judge instructed the jury that receiving the goods without objection on the ground of delay would be *primâ facie* a waiver of any such objection, but that if, un consenting to receive the goods, the plaintiffs gave notice that they should claim damages for increased expenses growing out of the delay, then receiving the goods would not be evidence of a waiver. The jury found for the plaintiffs. *Held*, that the question of waiver was properly left to them.

The defendants contracted to sell and deliver a large quantity of coal to the plaintiffs at a fixed price, in equal monthly portions, during a certain time, to be transported by vessel and rail, at the plaintiffs' expense, to their factory; and the plaintiffs agreed to receive the coal if the first cargo should prove satisfactory. *Held*, in an action to recover for a

breach of the contract in delivering coal of an inferior quality, and in failing to deliver it until after the contract time, that the measure of damages for the inferior quality was the difference between the value at the factory of the coal called for by the contract and that of the coal delivered, and the measure of damages for the failure to deliver in time was not the difference in the market value, but the difference between the actual charge for freight and insurance and the average rates during the time covered by the contract, especially in the absence of evidence that the average rates were higher than the rates at the end of the contract period.

In an action to recover damages for delay in delivering coal under a contract to sell and deliver coal during the summer, freight to be paid by the purchaser, evidence is admissible that freights on coal were usually higher in the autumn than in the summer, to show what was in the contemplation of the parties, and that the loss occasioned by increase in the freight is properly to be recovered as damages.

CONTRACT to recover damages for breach of an agreement, dated February 29, 1870, between the defendants, as parties of the first part, and the plaintiffs, as parties of the second part, the provisions of which were as follows :

" The parties of the first part agree to sell the parties of the second part 14,000 tons of the Preston & Gilberton Locust Mountain coal, deliverable from April 1 to September 1, current year, on board vessels at Philadelphia, in equal monthly proportions, as nearly as may be, at the price of $3.50 per ton of 2240 pounds, free on board, payable in cash. If the parties of the first part be interrupted in the delivery of the above coal during the time specified, viz : April 1 and September 1, current year, by strikes or any unforeseen causes, additional time will be allowed them to complete the delivery of the same, not exceeding one month. Bills of lading shall be *primâ facie* proof of delivery in regard to time and quality, and the coal when on board is to be at the risk of the parties of the second part. The parties of the first part agree to use their best exertions in procuring vessels at as low rates of freight as possible for the parties of the second part, and are to attend to the shipping of the coal without charge. Bills of lading are to be made to the treasurer of the parties of the second part, either to the Boston & Lowell Railroad Wharf in Boston, or to Phillips Wharf in Salem, so as to be conveniently delivered to the cars at either place, as customary, as the parties of the second part may direct. The parties of the second part agree to purchase and to receive the above coal as above described and specified, and to pay for the same as mentioned

above, provided the first cargo, which shall be shipped by the parties of the first part as early as navigation will permit, as a sample cargo of the coal, shall prove satisfactory to the parties of the second part; a reasonable time to be allowed for testing the same; if not satisfactory, then this agreement to be void."

The breach alleged was, that a portion of the coal delivered was inferior to the alleged sample, and that another portion was not delivered at the specified time.

At the trial in this court, before *Ames*, J., the execution of the agreement was admitted, and it appeared " that the sample cargo was received by the plaintiffs," who are a manufacturing corporation, " at Lowell, in April 1868, and that seven or eight cargoes in about a month afterwards were landed at Boston and Salem and forwarded to the plaintiffs' works at Lowell." And there was evidence tending to show " that the quality of the coal making up these cargoes proved on trial at the plaintiffs' works at Lowell to be inferior to the sample; that they objected to it, and notified the defendants that no more of that kind would be received; and that the delivery at Philadelphia of a large portion of the coal did not take place till after October 1, whereby the plaintiffs were obliged to pay higher prices for freights and insurance." There was conflicting evidence upon the question " whether the plaintiffs agreed to waive all objection to the quality of the coal so complained of, provided the remainder should be such as the contract required, or whether that matter was merely reserved for adjustment on final settlement."

" In order to show what increase there had been in freights and insurance, resulting from the delay in delivery, the plaintiffs were permitted to show what had been the actual expense to them, under these heads, upon the coal shipped within the period limited by the contract, and what had been the actual expense for the same items on the coal shipped after that time; also to show the number of tons received within the period limited by the contract, and the average rate of freight on each ton, and the same things as to that portion of the coal that was shipped after that period; and also the increase in the cost of insurance. The

treasurer of the plaintiffs, who testified that he had been long in the practice of buying and receiving coal from Philadelphia, was permitted to testify that freights on such shipments were usually higher in the autumn than in the summer months. To all this evidence the defendants objected as inadmissible; but the judge admitted it.

" It appeared that, from a strike of miners or some other cause, the price of coal advanced in Philadelphia from $3.50 per ton in July to $5.00 in October and November, when the last coal was delivered; and that freights were usually, but not always, higher in the autumn than in the summer months; that the plaintiffs paid the freights from Philadelphia on all the cargoes which they received; that they made no complaint of delay upon any ship-ment previous to October 1; and that they had no opportunity to test the quality of the coal, until they began to use it in their works at Lowell; and it did not appear that the freights in the latter part of September were lower than the average rate during the three months from July 1.

" The defendants offered evidence tending to show that, shortly before the expiration of the time limited by the contract, and when it had become manifest that the coal could not all be deliv-ered within that time, their agent applied to the plaintiffs' treas-urer to inquire whether they would receive after the time limited by the contract what remained to be delivered; and the answer was, that they not only would consent to, but insisted upon, its delivery. The plaintiffs offered evidence tending to show that the treasurer said at the same time that the plaintiffs would claim damages for any increase in the cost of the coal at Lowell pro-duced by any advance in freights and insurance. The defendants denied that any such notice was given to their agent, or any such claim made; and they introduced evidence tending to show that all objection on the part of the plaintiffs on the ground of the delay was waived, if the defendants would agree to pay the in-creased expense of insurance, which they did agree to do.

" There was also evidence that the coal objected to as bad in quality arrived at Lowell at different dates, but early in May and that the defendants were notified that it was not satisfactory,

late in that month, and sent one of their firm to Lowell to examine it; but whether there was any neglect or delay in giving notice of the objection within a proper time was one of the questions of fact submitted to the jury under instructions to which no exception was taken.

" The defendants asked the judge to rule that, if the plaintiffs had any claim on the ground of delay in the delivery, their damages were to be estimated by the difference in the market value of the coal between the time embraced in the contract and the time of the actual delivery ; and they objected to all evidence of increased rates of freight and insurance, on that ground. They also asked the judge to rule that, by demanding the delivery of the coal after the expiration of the contract period, and then accepting it, the plaintiffs had waived the element of time in the contract ; and insisted that, if the plaintiffs could recover for difference in freight and insurance, it would be only for the excess paid above the rates paid for shipments made at the termination of the contract period, and not above the average rates of that period ; and that, if they had any claim for deficiency in quality, it must be for difference in value at the place of delivery, and not at Lowell, the place of consumption."

The judge did not rule as requested, but instructed the jury " that, if the plaintiffs received the coal at Lowell without any complaint or objection on account of its bad quality or the delay in delivery, it would be *primâ facie* evidence of a waiver of all objection on either of these grounds ; but if, on trial of it at their works, and within a reasonable time thereafter, they gave notice to the defendants that damages or allowance would be claimed on account of its bad quality, such receiving of the coal would not be evidence of a waiver of that objection ; that if, on consenting to receive that portion of the coal which was delivered after the expiration of the contract period, they gave notice that they should claim damages for increased expenses growing out of such delay, receiving it under such circumstances would not be evidence of a waiver of that objection; that, if the delay in the delivery of the coal increased its cost to the plaintiffs, by increasing the charges for freight and insurance above the average

rate for those items or shipments during the contract period, they would be entitled in this action to recover such actual increase of the cost, unless some waiver or modification of the agreement in that respect should be shown ; and that, if the plaintiffs proved that any portion of the coal delivered was inferior in quality to what they were entitled to receive, they were entitled to recover an allowance for such deficiency in value, or for the difference between the value of the coal delivered at Lowell and that of the coal which by the contract they were entitled to receive, unless some waiver of objection for that cause were shown, without reference to the value at the place of shipment."

The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions.

*B. R. Curtis & B. Dean*, (*T. Dean* with them,) for the defendants.

*J. G. Abbott*, (*S. A. B. Abbott* with him,) for the plaintiffs.

COLT, J. The plaintiffs claim damages both on account of the inferior quality of the coal delivered, and the failure to deliver within the time named in the contract. The defendants insist that both claims were waived. As to the first, there was evidence that the quality of the coal was objected to within a reasonable time after its receipt. And as to the second, there was evidence of an oral arrangement for delivery after the expiration of the time named in the contract, upon which the judge was asked to rule as matter of law. But the arrangement was a matter upon which the evidence was conflicting, and tended on the one side to show an unconditional consent of the plaintiffs to extend the time, and on the other that the subsequent delivery, consented to or insisted on, was to be subject to the claim for any increased cost occasioned by advances in freights or insurance. Whether there was an intentional and unconditional surrender of the right to have the coal delivered according to the terms of the contract, both as respects time and quality, was in the province of the jury to decide, and the question was left to them with appropriate instructions. *Fox* v. *Harding*, 7 Cush. 516, 520.

As to the rule of damages, the plaintiffs are entitled to recover for such losses as were the direct and natural consequence of the

defendants' failure to perform, and also for such as were foreseen, or may reasonably be supposed to have been foreseen, at the time of making the contract. To ascertain what these were, resort must be had to the terms of the contract for its meaning, as applied to the subject matter, and as interpreted by the general and known usages of the business to which it refers. It was in substance an agreement to deliver on board vessels at Philadelphia, to the plaintiffs, who are a manufacturing company at Lowell, at a fixed price, a large quantity of coal, in equal monthly proportions, during the time included in the contract. A sample was to be sent and tested by the plaintiffs, and bills of lading made to wharves either in Salem or Boston, at the plaintiffs' option, so as to be conveniently delivered to the cars in either place, as customary, and without doubt contemplating its further transportation by rail to the plaintiffs' place of business. It was therefore not simply the sale of property to be delivered at a particular time and place, but it was an agreement for the delivery of property to be transported by vessels and by railroad, at the plaintiffs' expense, to their place of business in Lowell.

This construction of the contract fully sustains the rule of damages laid down at the trial. The loss from inferior quality, to which the plaintiffs are entitled, is the loss which they sustained at Lowell. There is nothing in the case to show that they were bound, or that it was expected they would be bound, by any prior acceptance of it, at the place of shipment or elsewhere; and so the loss by the increased charges for freight and insurance is a fair measure of damage to them, ascertained by the failure to deliver in time. Nor do we perceive that any wrong is done by taking the increased rates of freight and insurance above the average rates during the contract period, especially as it does not appear that the average rates for shipment were higher than the rates paid at the termination of the contract period. These items of damage are fairly contemplated by the contract.

The difference in market value of the coal between the time of actual delivery, and the time it should have been delivered, as a rule of damages, is not applicable. The plaintiffs received all the coal called for by the contract, at the contract price, and do

not claim damages for any deficiency in quantity. They are entitled to the benefit of their contract, although the market value had increased by the delay.

The objections taken to the admissibility of the plaintiffs' evidence appear by this discussion to have been properly overruled. It was clearly competent for the treasurer to testify that he had long been in the practice of buying and receiving coal from Philadelphia, and that freights were usually higher in autumn than in summer. The understanding of the parties must be ascertained by the nature of the traffic to which the contract refers. *Cutting* v. *Grand Trunk Railway Co.* 13 Allen, 381. *Batchelder* v. *Sturgis*, 3 Cush. 201, 204. *Bartlett* v. *Blanchard*, 13 Gray, 429. *Exceptions overruled.*