BECK, (MURRAY v.) See Case No. 9,957.

BECK, (PERKINS v.) See Case No. 10,984.

———

## Case No. 1,207.

### Ex parte BECKER.

### In re NORTH.

[3 Cent. Law J. 495; [2] 22 Int. Rev. Rec. 266; 3 N. Y. Wkly. Dig. 60; 1 Cin. Law Bul. 165.]

District Court, D. Massachusetts. May Term, 1876.

BANKRUPTCY —COMPOSITION — CLAIM FOR BREACH OF CONTRACT—MEASURE OF DAMAGES—NON-DELIVERY OF GOODS BOUGHT FOR FOREIGN MARKET.

[The measure of damages for breach of a contract to deliver goods at Boston for shipment to a foreign market is the difference between the contract and the market price at Boston, since the contract is divisible, thus giving the consignee the right of election as to whether he would receive the goods at such foreign market or Boston.]

[In bankruptcy. In the matter of C. H. North and others. On the application of H.

———

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reprinted from 3 Cent. Law J. 495, by permission.]

Becker and others to prove a judgment debt against the bankrupts. Granted.]

J. T. Barrett, for creditors.

N. Morse and W. E. L. Dillaway, for debtors.

LOWELL, District Judge. The creditors and debtors respectively submitted to the court the question, what damages should be proved against the assets for an admitted breach of contract. A case between the parties had been tried in the circuit court, resulting in a verdict for the plaintiffs, the creditors, for $1,250 and interest, but being dissatisfied with the rule of damages laid down at the trial, they had filed a bill of exceptions which had been allowed. Since the trial the defendants have become insolvent, and have offered a composition to their creditors, which these plaintiffs are willing to accept for such sum as they could recover at law. The contract was that the defendants should deliver a large quantity of pork of a certain description and quality at Boston, free on board a steamer or sailing vessel during the month of March, to be shipped to Antwerp at a stipulated freight; and they wholly failed to perform this contract. The plaintiffs, who were merchants in New York, claimed to recover the difference between the contact price, and the market price in Antwerp, at the end of March, or some later time, which would give them $5,628; and the defendants admitted a liability for the difference in price at Boston. Correspondence which passed between the parties before and after the breach was submitted de bene, and contained some statement, concerning a loss by re-sale, but such loss was not proved, nor relied on by the plaintiffs.

The distinctions adopted on this subject are very nice, and this case comes near to some that are on each side of the line. The general rule is that the damages for a breach of contract to deliver goods, is the difference in price of that precise kind of goods at the time and place of performance. That rule would give the plaintiffs only the sum awarded by the jury under the instructions of the court, if Boston is to be regarded as the place of performance. It is argued by the plaintiffs that when goods are known to be bought for a particular market, and the seller agrees to forward them to that market, the latter becomes the place of performance or, if not, it becomes the place whose market price is to govern the damages. A passage from Add. Cont. (7th London Ed. 1875) p. 473, is cited to the effect that if a foreigner orders goods in England to be forwarded to a foreign market for sale and the seller knows of this purpose and undertakes to forward the goods, but neglects so to do, the measure of damages is the difference between the contract price and that of the foreign market. The cases cited by Mr. Addison do not sus-

tain this proposition, but I agree to its correctness, as I understand it. The distinction between the case supposed and this case is that the foreigner has no means of indemnifying himself until it is too late; he is not in England nor bound to be there, and the market price there is of no consequence to him, he has a right to go and meet his goods in the foreign country, or to await them there, if it is his own country and his loss arises not only out of the breach of the contract to sell, but also of that to forward the goods. Such a case was Bell v. Cunningham, 3 Pet. [28 U. S.] 69, cited by the plaintiffs; where a correspondent abroad being ordered by a merchant here to ship certain goods to Havana, by a certain vessel, shipped something else and it was held the damages were to be ascertained at Havana.

In the many cases against carriers who have undertaken to deliver goods at a certain place, of course the damage is to be ascertained at that place. Here, both parties were contracting at home and the goods were to be delivered at Boston, on board ship, to be.sure; but the contract was divisible, and the plaintiffs would have a clear right to revoke that part which required them to be shipped, and to say, "We will take the goods in Boston and pay the full price." If, then, it had happened that the price had risen here and fallen in Antwerp, so that the plaintiffs would have made a large loss by the shipment, would they not have had the right to offer to take the goods here, and if delivery was refused, to insist on the measure of damages which the defendants now insist on? I think so. And the rule must be the same for both parties, and under both contingencies, excepting that if the plaintiffs still desired the goods for shipment, they may recover any increased charges, such as freight and insurance, in addition to the increased price.

Of the two cases cited by Mr. Addison one was against a carrier for non-delivery at A., and of course the damages were suffered at that place. The other is Borries v. Hutchinson, 18 C. B. (N. S.) 445. In that case two material facts were found: 1st. There was no market price in England; 2d. The seller knew that the buyer bought to sell again; and the court allowed, not the difference of market price in the two places, but the actual profit of the re-sale. A very recent case in England, later even than the last edition of Addison, was decided on the authority of Borries v. Hutchinson. It was this: the seller knew that the buyer was to ship the goods to a foreign country; and upon the breach, there being no market price for such goods in England, and no such goods to be had, the buyer purchased in England such goods as were most like them, and thus filled his sub-contract, and was allowed the increased price of those goods above the contract price. Hinde v. Liddell, L. R. 10 Q. B. 265. It results from these cases; not that the foreign

market is to rule, but that if the domestic buyer cannot indemnify himself by buying the article in the home market, he may have his actual loss, whether that happens to be more or less, and whether it is measured by a domestic or a foreign standard, if this loss was such, as, by reason of notice or contract, the parties may be presumed to have contemplated. I understand, too, that in the last case the court considered that a notice that the goods were for shipment, was equivalent to notice of a resale, or at least of an intent to sell again. In this case no evidence has been given of actual loss; no evidence of a re-sale; of a rise in freights or insurance; of the lapse of a season in the trade; of anything peculiar in the circumstances. The naked facts are presented, of a market price here and a higher market price in Antwerp; and on that showing I say there is no rule of law and no decision known to me or cited in argument that takes it out of the ordinary doctrine of the difference between the market price in Boston, and the contract price. Two American decisions were cited: Messmore v. New York Shot & Lead Co., 40 N. Y. 422; Merrimack Manuf'g Co. v. Quintard, 107 Mass. 127. In the former the defendant undertook to furnish in New York bullets of a certain kind and quality, and was informed that they were ordered to fill a particular contract with the state of Ohio; it was held that the plaintiffs might recover their actual loss in Ohio. In the second, coal was to be delivered in Pennsylvania for use in the plaintiff's factory in Massachusetts, and was delivered, but of inferior quality and later than the contract required, and the damages in Massachusetts were allowed. The latter of these cases is a good illustration of the proposition above cited from Addison, because the plaintiffs had no agent at Philadelphia to inspect or accept the coal. In neither of these cases was it proved or admitted that the plaintiff had an opportunity to recoup himself by buying the article at the market price of the day, at the time and place of the breach; but the contrary is to be clearly inferred from the facts of both those cases.

I do not mean to say that the plaintiffs here might not have recovered not only the considerable sum they ask for, but much more, if the facts were that they suffered more. This decision rests upon the simple ground that evidence of a market price in Boston makes out prima facie the measure of damages claimed by the defendants; and that the plaintiffs should go further, and show, if they can, that they have necessarily lost more in this particular case. That such additional loss, if proved, was or should have been within the contemplation of the parties, is perhaps sufficiently shown by the agreement to ship the goods to Antwerp; but it is not proved, and, in the mode the case is presented, I have the right to infer that it was incapable of proof, though mentioned in some of the plaintiffs' letters.

One word more to prevent misapprehension. It was said that the defendants had prevented the plaintiffs from shipping other goods by promising to make the shipment after the regular time of performance. I do not think the letters of the plaintiffs give any consent to a postponement. They insist throughout that they shall hold the defendants for full damages. But supposing that there was a postponement, the rule of damages would be the same at the end of the extended time as before; and for the reasons already given I cannot find that any other damages were suffered at that or any time.

Debt admitted for $1,250 and interest.