KEELING-EASTER COMPANY

*vs.*

R. B. DUNNING & COMPANY.

Penobscot. Opinion February 10, 1915.

*Carrier. Contract. Delivery. Evidence. Exceptions. Sale. Self-Serving Letters.*

1. In the trial of a suit brought to recover the price of oyster shells sold in accordance with the terms of a written contract, in which the vendor agreed that they should be packed in "burlap sacks," a letter written previously to the making of the contract, by the vendor to the vendee, in which it was stated that "we expect to use new burlap bags," is inadmissible to add to, or vary, the terms of the written contract.

2. Letters and telegrams, written by one party to the other in the usual course of business, respecting the subject matter of the controversy, and not specifically to manufacture evidence, which by the character of their contents are naturally calculated to elicit replies and denials, are admissible in evidence, though they were self-serving, and were not answered.

3. Exceptions will not be sustained for the admission of a harmless answer to an irrelevant question; nor when a witness volunteers an inadmissible statement, which is ordered to be stricken from the record.

4. When oyster shells were contracted to be delivered on board of vessel at Norfolk, and it is claimed that those delivered there were inferior and defective and not in accordance with the contract, evidence of their condition on arrival by vessel at Bangor and afterwards is admissible as having some tendency to show their condition when put on board.

5. In an action to recover the price of goods sold and delivered when the purchaser seeks to recoup in damages by showing that the goods delivered were inferior in quality and value to those contracted for, the measure of damages which may be recouped is the difference between the value of the goods contracted for and the value of those actually delivered.

6. In the trial of an action for the recovery of the price of goods sold and delivered, when the purchaser seeks to recoup by showing that some of the goods delivered were defective and worthless, it is not error to instruct the jury that they might allow in recoupment such proportionate part of the expense of freight paid by the purchaser, and of the cost of handling on delivery as the amount of defective goods bore to the whole shipment.

On exceptions and motion for new trial by the plaintiff. Exceptions sustained.

An action of assumpsit to recover the sum of $2560 for crushed oyster shells for poultry sold and delivered by defendant to plaintiff. Plea, general issue, with brief statement.

The plaintiff, in the course of the trial, excepted to the admission and exclusion of certain testimony. The jury returned a verdict for the plaintiff for $1009.33, and the plaintiff filed a general motion for a new trial.

The case is stated in the opinion.

*Fellows & Fellows*, for plaintiff.

*George E. Thompson*, for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HANSON, JJ.

SAVAGE, C. J. Assumpsit to recover the price of 512 tons of crushed oyster shells for poultry, sold and delivered by the plaintiff corporation to the defendant corporation at $5 a ton. The defense was that a portion of the shells delivered were inferior in quality, and not in accordance with the contract of sale, for which defects the defendant seeks to recoup in damages. The verdict was for the plaintiff for $1009.33. The case is before this court upon the plaintiff's exceptions and motion for a new trial.

The contract of sale was in writing, and signed by the parties or their agents, and was in these words: "Sold to R. B. Dunning and Company for account of Keeling-Easter Co. three hundred and fifty tons of crushed oyster shells for poultry, packed in 100 lbs. burlap sacks, with buyer's name stencilled on bags, at $5 per ton for the poultry size and if should require any of the chick size to have option on this size at $4 per ton, all less 1% discount F. O. B. Norfolk, Va.; also to have privilege of taking as much as 100 tons more if the size of the schooner to be chartered should require more cargo, shells all to be delivered F. O. B. schooner during August, buyers to give factory about two weeks notice of vessel calling for cargo."

The defendant chartered a schooner, and the plaintiff seasonably delivered the shells on board. This constituted a delivery to the defendant. *State* v. *Peters*, 91 Maine, 31. The shells were brought to Bangor, unloaded and received by the defendant. On discharging the cargo, it was found, as the defendant claims, that some of the

bags containing the shells were old, rotten and unsuitable, and were torn open, and that the contents were scattered in the hold of the vessel; that a large proportion of the shells were not standard shells crushed poultry size; that a good deal of the shipment was chick shell, for which there was no demand in Bangor, and that some of it was sweepings of the floor with hardly any shell in it. The defendant sold and shipped to customers about one-half of the entire lot. The defendant claimed to be allowed in recoupment not only the damage sustained by it by reason that the shells delivered were less valuable than the shells contracted for, but also for the expense of freight from Norfolk paid by it, and of handling in Bangor, and so forth.

With this statement of facts and contentions, the exceptions may be intelligently considered.

1. The defendant contended that the contract required that the shells should be shipped in new burlap bags, and that a part of the damage was due to the fact that the bags used, or some of them, were old, second hand and unsuitable. The contract itself said merely, "burlap sacks." But for the purpose of showing what was meant by this expression, the defendant was allowed, against the plaintiff's objection, to introduce the plaintiff's letter to defendant, dated July 3, 1913, in which it said "we expect to use new burlap bags." The objection was that the letter antedated the contract; and that it varied and added to the written contract afterwards made. In fact, there is no evidence in the case showing when the contract was made. It is undated. The court's ruling, however, was predicated on the assumption that the letter, as stated by objecting counsel, was written before the contract was made. And we so consider it. We think the letter was inadmissible. The words "burlap sacks" in the contract are a common trade name. The expression is clear and unambiguous. There can be no uncertainty as to its meaning. It was implied, of course, that the sacks should be suitable for the purpose for which they were to be used. Any suitable burlap sacks, new or old, would answer the terms of the contract. The letter imports that the sacks or bags were to be new ones. It adds a new condition as to quality not expressed in the contract. If the letter was written before the contract was made, it falls within the common rule that when parties put their contracts in writing they are conclusively presumed to have incorporated in the writing their final agreement as to all of its terms. All prior negotiations, or so much

of them as the parties see fit, are merged in the written contract.   No citation of authorities is necessary to support the doctrine that parol evidence is inadmissible to vary, add to, take from, or modify the terms of a written contract.   This exception must be sustained.

2.   After the shells were received, the defendant telegraphed the plaintiff, "Shell is not what we bought, will not accept it;" and later the same day, "Schooner arrived.   Shell not up to grade we bought. Cannot use any but grade bought.   What shall we do with it?   Find a good many second hand rotten bags in shipment.   Answer." And on a later day the defendant wrote a letter to the plaintiff specifying more particularly the defects in the shell, that much of it was "extremely fine ground shell, that is not much coarser than sand;" that "quite a lot of it went out in our shipments to customers before we knew there was of this in the cargo;" that the balance on hand "is not as coarse as it ought to be and it runs finer than what you said your standard shell is.   In working up our storehouseman's figures we show up 3984 bags of the medium shell.   We do not want the fine stuff.   Neither do we want the medium we reported about.   .   .   .   We are getting returns now every day from our customers who are kicking on receiving fine shell which is not according to their order with us or the order given by us for the cargo of shell."   These telegrams and this letter were admitted in evidence, subject to the plaintiff's objection.

To what extent and under what conditions, self-serving, unanswered letters and telegrams sent by one of the parties to the other, touching the controversy between them, are admissible in favor of the party sending, has been the subject of much discussion by the courts, and the decisions are not harmonious.   But we think that the general trend of decision is to the effect that letters written in the general course of business, and not specifically to manufacture evidence, which by the character of their contents are naturally calculated to elicit replies and denials, are admissible, although they are self-serving and were not answered.   2 Wigmore on Ev., 1263.   We have recently so held in *Ross* v. *Reynolds*, 112 Maine, 223.

Had the complaints made in these letters been made orally in conversation, but not answered, we think no one would question their admissibility.   Nor would there be any question if the letters had been answered.   The real ground of admissibility in a case like this is not that the writings themselves afford any proof that the state-

ments contained in them are true, but that silence, when statements are made which are calculated to draw forth a reply, may itself be an admission,—may raise some inference that the statements are true. It may have more weight, or less. That question is for the jury. If it can have any weight in that direction, the writings are admissible. As Mr. Wigmore says, "each case must stand on its own facts," and, tested by the rule we have stated, we think the telegrams and letter were properly admitted.

3. The defendant's manager was asked if they asked for sample of crushed oyster shells? and, against objection, was permitted to answer that they did. Exception was taken. The answer was harmless. Later, the witness stated in an answer which was not responsive to the question asked, that only a small part of the shell was up "to the sample." The presiding Justice properly ordered the answer stricken out, for the reason, we assume, that the sale was not by sample. Exception was taken to this answer also, but because of the direction by the presiding Justice, the plaintiff can take nothing by this exception.

4. Several exceptions were taken to the admission of testimony showing the condition of the shell when it reached Bangor, and afterwards, the contention of the plaintiff being that the only relevant inquiry was as to its condition when delivered "on board" the vessel chartered by the defendant, at Norfolk. It is true that the plaintiff was not responsible for what happened to the shell after it was delivered "on board," as required by the contract. It was delivered "on board," when it was put into the care and control of the carrier. For what happened afterwards the carrier was responsible. It was not the duty of the plaintiff to stow it. If the shell was in suitable sacks, and if they were torn in the process of storing in the hold of the vessel, so that the shell was scattered or lost, the plaintiff was not at fault.

But the condition of the shell as to fineness when it reached Bangor had a tendency to show its condition when it was put "on board." And the torn and rotten condition of the bags when received was admissible on the question whether they were suitable or not in the first place. And it may be added that the defendant was properly permitted to show, not only the condition of the shell when it reached Bangor, but what it appeared by inspection to be within a reasonable time afterwards. Complaint is made that the defendant was per-

mitted to show the condition of the shell at the time of the trial, seven months after the shipment.   Such evidence was clearly admissible, especially in view of the undisputed testimony that shell will not deteriorate within one year.   These exceptions must be overruled.

5.   The plaintiff asked that the jury be instructed as to recoupment, that the measure of damages is the difference between the price agreed to be paid and the market price of the like goods at the time and place of delivery."   The request was refused, and rightly. The rule requested is the rule of damages for non-delivery of goods sold.   *Berry* v. *Dwinal*, 44 Maine, 255; *Bush* v. *Holmes*, 53 Maine, 417; *South Gardiner Lumber Co.* v. *Bradstreet*, 97 Maine, 165.   This is a case of partial or imperfect performance.   The rule of damages, when goods sold are delivered and received, but are inferior in quality to those contracted for, is the same as in case of a breach of contract of warranty, that is, the difference between the value of the goods contracted for and the value of those actually delivered.   This rule exactly compensates the purchaser for his loss on the goods.   *Moulton* v. *Scruton*, 39 Maine, 287; *Thoms* v. *Dingley*, 70 Maine, 100; *Merrimack Mfg. Co.* v. *Quintard*, 107 Mass., 127; 35 Cyc., 647.   The agreed price is not a measure of the damages, in either direction.   If the shell were actually worth more than the agreed price, the purchaser was entitled to have the benefit of his good bargain, irrespective of the effect of the seller's breach of contract.   Suppose the shells contracted for were actually worth $6 a ton, and those delivered were actually worth only $3 a ton.   The purchaser's actual damage by the breach would be the difference between $3 and $6, and not merely the difference between $3 and $5, the agreed price.   On the other hand, if the shells contracted for were worth less than the contract price, the seller was entitled to the benefit of his good bargain. And if inferior shells were delivered, the purchaser's loss would be, not the agreed price, but less.   It would be the difference between the value of the shells which ought to have been delivered, and those which were delivered.   The requested instruction was properly refused.   In this connection, it may be observed that the instructions actually given do not conform to the rule which we have stated, in that they made the contract price the measure of damages, both for the shells which were worthless, and for those which had some commercial value, though not as contracted for.   That some of the

shells were of this latter description, we think the evidence, which is made a part of the bill of exceptions, would justify the jury in finding. But no exception was taken to this instruction.

6.   The presiding Justice instructed the jury that they might add to the damages for defective shells, ascertained in accordance with the rule which he gave them, based on contract price, such proportionate part of the expense of freight from Norfolk to Bangor, and the cost of handling at Bangor, as the amount of defective shells bore to the whole shipment.    Exception was taken to the instruction "relative to the recovery of freight and cost of handling."

Whether at all, and if so, to what extent special or consequential damages may be recovered in a suit for breach of contract is a question which is often before the courts.    In the leading case of *Hadley* v. *Baxendale,* 9 Exch., 353, the rule was stated to be that "where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract, should be either such as may fairly and reasonably be considered as arising naturally, that is, according to the usual course of things, from such breach of contract itself, or such as may be reasonably supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it."

The principle that in case of breach of contract such consequential damages may be recovered as may fairly be presumed to have been in the contemplation of the parties at the time of making the contract, has been affirmed in this State.    *Miller* v. *Mariner's Church,* 7 Greenl., 51; *True* v. *Telegraph Co.,* 60 Maine, 9; *Grindle* v. *Express Co.,* 67 Maine, 317; *Thoms* v. *Dingley,* 70 Maine, 100.   So in Massachusetts.   See *Merrimack Mfg. Co.* v. *Quintard,* 107 Mass., 127.   So elsewhere, 13 Cyc., 3361.

Applying the rule to the facts in this case, it seems clear that the expense of freight on vessel and of handling in Bangor were necessarily within the contemplation of the parties when the contract was made. The contract itself required a delivery on a carrying vessel.   It was contemplated that the shell was to be transported somewhere, and that involved the payment of freight.   Likewise, there would necessarily be the expense of handling at the end of the voyage.   See *U. S.* v. *Behan,* 110 U. S., 338.   The instruction complained of was correct.

There are other minor exceptions, but not of sufficient importance to require discussion. We have examined them all. We find no error excepted to, except with respect to the admission of the letter mentioned in the first exception. For that error, the certificate must be,

*Exceptions sustained.*