The appeal is from an order of the Circuit Court of Mobile County overruling consolidated motions for a new trial.
Baumhauer-Croom Insurance, the appellee, initiated this action by filing suit against appellant Hardy Insurance seeking a declaratory judgment that an oral agreement, previously entered into by the parties, for the sharing of premiums on marine insurance had been terminated. Hardy filed with its answer a counterclaim asking for $160,000 damages for wrongful interference with a business interest, alleging that Baumhauer-Croom had taken away from Hardy a valued business customer. A jury awarded Hardy $5,000 damages on the counterclaim. Dissatisfied with the amount of the verdict, Hardy filed several motions for new trial. These motions were consolidated and overruled and court costs were *Page 586 
taxed against Hardy. It is from this order that Hardy perfected its appeal.
Hardy says the issues on appeal are as follows:
1. The $5,000 verdict is inadequate.
 2. The imposition of court costs as punishment for filing a motion for new trial is wrong.
 3. The trial court erred in excluding a letter from Hardy to Baumhauer-Croom, written after Hardy received notice that it no longer was the placing agent for a long-standing customer's marine insurance coverage, setting out Hardy's version of an oral agreement between the parties.
 4. The court erred in excluding a letter, written by Hardy to a witness after the case was filed, which was received but not answered and which would have contradicted testimony of the witness.
The facts show that in early 1970 Hardy approached Mr. Baumhauer asking for assistance in placing the marine insurance of Simms Brothers Towing Company, a longtime insurance customer and personal friend of Hardy. Baumhauer agreed to place the insurance and split the commissions, an arrangement in the insurance trade known as a brokerage agreement. Baumhauer was able to find adequate coverage for Simms.
According to generally accepted practice in the insurance trade, normal procedure under a brokerage agreement is for the producing agent, here Hardy, to furnish necessary information about the customer being insured to the placing agent, here Baumhauer-Croom. The placing agent then provides the information to prospective insurers. Upon finding an insurer, the placing agent delivers the policy issued to the producing agent, who in turn delivers the policy to the customer and receives the premium. The producing agent then gives the placing agent the agreed share of the premium.
The procedure outlined above was not followed in the present case. Instead Baumhauer, when asked to place the insurance, requested of Hardy that he be allowed to deal directly with the client. Hardy agreed. From that point on Baumhauer dealt directly with Simms and in fact acted as its insurance agent. Baumhauer mailed the insurance policy directly to Simms and Simms paid the premiums directly to Baumhauer. Hardy merely received its share of the premiums as they were paid; it performed no further services.
On April 24, 1973 Simms wrote Hardy a letter stating that in the future Baumhauer-Croom would be the sole insurance agent for Simms. Hardy then wrote Baumhauer a letter attempting to establish the terms of their oral brokerage agreement made three years previously. Hardy also had a personal conversation with Mr. Baumhauer. As a result of either the letter or the conversation, or both, Baumhauer-Croom paid Hardy commissions due on policies for the period April 1, 1973 to March 31, 1974.
On March 4, 1974 Baumhauer wrote Hardy that Baumhauer-Croom was no longer able to share the commissions on the Simms' account. On June 18, 1974 Baumhauer-Croom filed suit for a declaration of the status of the parties as to the brokerage agreement, seeking to have the agreement declared terminated. In response Hardy counterclaimed, alleging as ground therefor tortious interference with a business relationship and seeking $10,000 compensatory damages and $150,000 punitive damages.
The first issue raised by appellant Hardy is inadequacy of the damages award. Hardy claims he proved by undisputed and uncontradicted evidence that he was entitled to $17,728.75, representing benefits lost as a result of Baumhauer's assuming the Simms' account, and that the verdict of $5,000 is inadequate as a matter of law.
The proof of damages adduced by Hardy at trial indicates that there was some confusion as to the measure of damages. While his action was based in tort, his claim for damages was grounded on his contract with Baumhauer-Croom. The general rule is that compensatory damages are intended to reimburse the plaintiff for loss *Page 587 
suffered by reason of the injury inflicted by the defendant,Matheny v. Petersen, 276 Ala. 478, 163 So.2d 635 (1964). The injury of which Hardy complains, and for which he recovered, is not that Baumhauer-Croom breached its contract with Hardy but rather that Baumhauer-Croom tortiously interfered with Hardy's business relationship with Simms by taking away Simms' business. Thus, Hardy is due to be compensated for whatever loss he sustained as a result of no longer having Simms as a customer. See Sparks v. McCrary, 156 Ala. 382, 47 So. 332
(1908).
After Hardy and Baumhauer-Croom entered into the brokerage agreement, the benefit to Hardy in keeping Simms as a customer was that Hardy shared the commissions paid by Simms to Baumhauer-Croom. Thus, a short discussion of the contentions of the parties as they relate to the brokerage agreement is necessary. Both parties admit that they initially agreed that Baumhauer-Croom would split the commissions it received from Simms with Hardy; they disagree, however, as to how the commissions would be split and the duration of the brokerage agreement.
Hardy's position is that Baumhauer-Croom agreed to share the commissions on a fifty percent basis, which is the usual practice in the trade, and furthermore that Baumhauer-Croom would share the commissions for as long as it placed insurance for Simms, regardless of Simms' relationship with Hardy. Under this theory, Hardy has suffered no loss and is therefore entitled to receive nothing, since Baumhauer-Croom must continue to split the commissions with Hardy even if Simms is no longer Hardy's customer.
Baumhauer-Croom contends that it never agreed to an equal split of commissions with Hardy, and that any obligation to Hardy with regard to the commissions ceased when Simms terminated its business relationship with Hardy. Under this theory, Hardy's measure of damages is the amount of commission payments he would have received had Simms remained his customer and had the contract remained in force.
The standard of review when adequacy of the damages is challenged is whether the record affirmatively reveals either an improper motive of, or improper influence on, the jury. If there is no such showing, then it must appear that the verdict fails to give substantial compensation for substantial injury.Alabama Farm Bureau Mutual Casualty Insurance Co. v. Anderson,52 Ala. App. 651, 296 So.2d 739 (1974).
The brokerage agreement was entered into in 1970. In April 1973 Simms replaced Hardy with Baumhauer-Croom as its exclusive insurance agent. Baumhauer-Croom ceased paying a percentage of the premiums it received from Simms to Hardy in April 1974, and filed suit for declaratory judgment in June 1974. Hardy claims he is entitled to receive $4,308.25, representing the difference between the share of commissions he received until April 1974 and the amount he would have received had the commission been equally divided; $5,670.50, representing fifty percent of the commissions Baumhauer-Croom received from Simms from April 1974 to April 1975; and $7,750.00, representing fifty percent of the commissions Hardy estimated that Simms paid to Baumhauer-Croom from April 1975 to April 1976, just before the trial. The last figure was not allowed into evidence.
Under Hardy's action in tort, he is not entitled to recover sums claimed prior to April 1973, when Simms was still his customer, or April 1974, when Baumhauer-Croom continued to split the commissions even though Simms was no longer Hardy's customer; such sums, if due, would be a debt, not damages. The amount of commissions made by Baumhauer-Croom after April 1975 is unknown, although Hardy estimated an amount without foundation in the evidence. Thus, according to the evidence introduced by Hardy at trial, he would have received $5,670.50, if the commissions were split equally, as his percentage of the premiums paid by Simms to Baumhauer-Croom from April 1974 to April 1975. Since Baumhauer-Croom introduced evidence indicating that the commissions *Page 588 
were to be divided on less than a fifty percent basis, we cannot say that the $5,000 awarded by the jury is not substantial compensation for substantial injury.
Hardy's second contention is that the trial court imposed costs on Baumhauer-Croom for the main case, but when it denied Hardy's motions for new trial changed its decision and imposed all costs on Hardy. Baumhauer-Croom answers this claim by saying that the court did not change its mind and impose all costs on Hardy. They suggest that under the trial court's order Baumhauer-Croom must pay the costs of the main case and that Hardy must pay the costs incurred as a result of the proceedings on the motions for new trial.
Rule 54 (d) ARCP provides:
 "Except when express provision therefore is made in a statute, costs shall be allowed as of course to the prevailing party unless the court otherwise directs,. . . ."
We are persuaded that the trial court taxed costs against the losing party, Baumhauer-Croom, in the main case, and taxed costs against the losing party, Hardy, in the proceeding seeking a new trial. Both orders being in compliance with Rule 54 (d), supra, this contention has no merit.
Hardy raises as his third issue the trial court's refusal to admit into evidence a letter written by Hardy to Baumhauer-Croom after Hardy received a letter from Simms written by its vice president, John Kern. In Simms' letter, dated April 24, 1973, Kern informed Hardy that Simms was terminating its insurance business with Hardy and giving it exclusively to Baumhauer-Croom. Hardy's letter to Baumhauer, dated May 9, 1973, sought to confirm in writing the oral agreement made some three or four years previously relating to the Simms marine insurance. Hardy stated in this letter that he and Baumhauer had agreed to split the commission on the wet marine insurance for as long as Baumhauer-Croom had the business. Hardy then requested a check for fifty percent of the commissions on the 1973 renewal of the Simms' account.
Hardy says in brief that Baumhauer, upon receipt of this letter, remitted to him commissions for the year ending March 31, 1974. Baumhauer denies that he assented to this letter or that he complied with it. He claims he paid Hardy some of the commissions for the 1973 renewal year only after Hardy came to his office and threatened him with bodily harm. On cross-examination Hardy admitted that he received the money after his visit with Baumhauer.
Relying mainly on the case of Denson v. Kirkpatrick DrillingCo., 225 Ala. 473, 144 So. 86 (1932), which was followed inCrawford v. Holmes Waddell, Inc., 280 Ala. 89, 190 So.2d 282
(1966), Hardy suggests that the letter should have been admitted into evidence on the theory that it was part of the res gestae and therefore not a self-serving declaration. Baumhauer contends the letter was properly excluded on the ground that it was a self-serving declaration.
A thorough consideration of Denson is in order at this time. First, it should be pointed out that the letter involved inDenson did not appear to be a written confirmation of a previous oral agreement, as is Hardy's letter to Baumhauer-Croom. Rather, its form was that of an original proposition which on its face evinces an intent that the writing be signed or otherwise accepted in order to become a binding obligation. The Denson letter was erroneously admitted into evidence and the question before the court was whether that error called for reversal of the trial court.
The Denson court then stated the general rule that written communications from one party to another party as to the character of dealings between them or the liability of the party to whom they are addressed are not admissible in the absence of any reply assenting to the communication. The court then said:
 "There are, however, some exceptions to this general rule, and one of these is that unanswered letters are admitted in favor of the writer when they are of the res gestae of the transaction under *Page 589 
investigation. Murray v. East End Imp. Co. (Ky.) 60 S.W. 648, 22 Ky. Law Rep. 1477; Thorndike v. City of Boston, 1 Metc. (Mass.) 242; Moses v. Katzenberger Sons, 84 Ala. 95, 4 So. 237; Cleveland Woolen Mills v. Sibert, Ward Co., 81 Ala. 140, 1 So. 773.
 "Another statement of this exception to the rule is that such letters are admissible, though they contain self-serving declarations and are not a part of the mutual correspondence, when they relate to existing contracts between the parties. Peninsular Naval Stores Co. v. Parrish, 13 Ga. App. 779, 80 S.E. 28; Ross v. Reynolds, 112 Me. 223, 91 A. 952; Keeling-Easter Co. v. R.B. Dunning Co., 113 Me. 34, 92 A. 929; Dennis v. Waterford Packing Co., 113 Me. 159, 93 A. 58, Ann. Cas. 1917D, 788; Sturtevant v. Wallack, 141 Mass. 119, 4 N.E. 615; Gore v. Hawsey, vol. 3 Foster Finlason's Rep. (Eng.) 509.
 "The letter . . . was within the exception last above stated, and it was admissible as tending to show plaintiff's conception of the contract, and its weight was for the trier or triers of fact."
The Denson court thus concluded that admission of the letter in question was harmless error because it was admissible under a different rule of evidence. However, it is unclear precisely what that rule is as enunciated by the court. It is that rule on which Hardy relies.
Focusing on the language, "Another statement of this exception to the rule . . .," the Denson decision could be taken to mean that an unanswered letter is admissible in favor of the writer if the letter is part of the res gestae of the transaction and additionally it relates to an existing contract between the parties. That is the interpretation given theDenson rule by this court in Cunningham v. Lowery, 45 Ala. App. 700, 236 So.2d 709, cert. den. 286 Ala. 734, 236 So.2d 718
(1970). We said there that the letter in question was not part of the res gestae of the transaction, because written and presented at a time remote from the oral agreement, and therefore was not admissible even though relating to an existing contract between the parties.
On the other hand, the Denson decision could be interpreted as stating two distinct exceptions to the general rule excluding unanswered letters, one admitting such letters when part of the res gestae and the other admitting unanswered letters when they relate to existing contracts between the parties. This interpretation is based on the introductory language at the beginning of the first paragraph of the quoted portion of the Denson opinion above; the language in the second paragraph stating the letter need not be part of the mutual correspondence between the parties; and the language in the last paragraph quoted that the Denson letter falls within "the exception last above stated." Furthermore, a different line of cases is followed for each proposition.
It seems that our supreme court interprets Denson as stating two separate exceptions to the general rule, as evidenced by its decision in Crawford v. Holmes Waddell, Inc., supra.
According to Crawford, an unanswered letter which contains self-serving declarations and is not part of the mutual correspondence of the parties but which relates to an existing contract between the parties is admissible into evidence for the purpose of showing the writer's conception of the contract. Its weight is for the jury.
The difficulty of grounding the rule enunciated above onDenson is that Denson is not sound authority for such a rule. An examination of the cases upon which Denson relies indicates that they do not at all stand for the proposition for which cited in Denson as a separate exception.
The holding of the three Maine decisions can be summed up by quoting from Dennis v. Waterford Packing Co., 113 Me. 159,93 A. 58 (1915):
 "We have recently held that letters and telegrams sent in the general course of business, by one party to a suit to the other, and not specifically to manufacture evidence, which by the character of their contents are naturally calculated to elicit *Page 590 
replies and denials, are admissible in evidence, although they are self-serving, and are not answered. Ross v. Reynolds, 112 Me. 223, 91 A. 952; Kelling-Easter Co. v. Dunning Co., 113 Me. 34, 92 A. 929. The ground of admissibility is, not that the writings themselves afford proof that the statements in them are true, but that silence when such statements are made may itself be an admission. We think the evidence offered and excluded falls within this rule, and that it should have been admitted. These observations will apply also to other instances of exclusion of oral statements made by the plaintiff to the representative officers of the defendant. The exceptions must be sustained." 93 A. at 60.
Peninsular Naval Stores Co. v. Parrish, 13 Ga. App. 779,80 S.E. 28 (1913), was decided under a Georgia statute and thus is not apposite.
Sturtevant v. Wallack, 141 Mass. 119, 4 N.E. 615 (1886), dealt with a series of items, including bills and letters, which had been received but unresponded to. The court said it was proper for those facts to be in evidence, since:
 ". . . when a charge is of such a kind that, according to common experience, a man would naturally repudiate it if unfounded, the fact that it was made and not repudiated may be left to the jury." 4 N.E. at 617.
It is readily apparent from examining these cases that all dealt with letters written in the general course of business and were admissible as tending to be an admission by the receiving party of the truth of the matter asserted in the letter. The rule as enunciated in Denson says that the letter need not be part of the mutual correspondence between the parties, and further that it is admissible only to show the offering party's conception of the contract.
Not only is the second exception to Denson unsound because not grounded in authority, it is unnecessary as a rule of evidence and in effect permits a party to manufacture evidence. There is no reason to permit a party's writings to be admitted into evidence in order to establish that party's conception of a contract when the party is capable of testifying firsthand as to his or her conception of the contract. Nor is there any logical reason to distinguish between unanswered letters relating to an existing contract and other unanswered letters, as the rule seems to do. Finally, when it is not required that the unanswered letter be part of mutual correspondence between the parties or otherwise related in time to the transaction, a party is allowed, as in the case before us, to shore up evidence years after the transaction by writing a letter. The problem can be summed up in the words of the court below:
 ". . . Now, throughout this trial I have been bombarded with letters and statements by Harry D. Hardy, and I am not going to let a party prove their case by their own letters or their own statements. . . ."
We find such a practice neither necessary or desirable.
However, if Crawford v. Holmes Waddell, Inc. is the prevailing law in this state, then we must rule that the trial court erred in refusing to allow Hardy's letter dated May 9, 1973 to Baumhauer-Croom into evidence, even though not a part of a mutual correspondence and containing self-serving statements, for the reason that it referred to and was connected with an admittedly existing contract. We hold, however, that such error was harmless since Hardy testified fully regarding his conception of the contract and ample evidence concerning the existence and terms of the agreement according to Hardy was before the jury.
The final issue concerns the refusal of the trial court to admit into evidence a letter written by Hardy to Kern dated August 20, 1974. The letter from a party, i.e. Hardy, to a witness, i.e. Kern, was written just a few weeks prior to trial and purported to confirm a conversation which supposedly occurred between the two on August 20, 1974, wherein Kern is alleged to have said that he did not initiate any effort to eliminate the commission arrangement between Hardy and Baumhauer. The letter was offered *Page 591 
to impeach the testimony of Kern given at trial that he did initiate the termination of the Simms insurance account with Hardy.
The trial court refused to admit the August 20, 1974 letter on the ground that it was a self-serving declaration. Hardy says the letter constitutes an admission on Kern's part, since he did not answer it, and is therefore admissible on that basis. The trial court committed reversible error by not allowing its use for impeaching Kern's oral testimony at trial. Baumhauer-Croom replies that Kern as president of Simms was a witness, not a party, and had no direct interest in the outcome of Hardy's claim against Baumhauer-Croom. Thus Kern's failure to respond is neither a party admission nor a declaration against interest, and the letter is self-serving. The letter is as follows:
 "This letter is to confirm our conversation of August 20, 1974 at approximately 11:00 A.M., wherein you stated that you never initiated any action aimed at eliminating the commission agreement between Baumhauer and myself or had never made the statement that you `may not be getting full service if Baumhauer-Croom were only getting half the commission' on the account.
 "Actually, I knew from our long association that Baumhauer's deposition was in error and that neither you nor Alton would have made the statements attributed to you by Baumhauer and my purpose in reading these statements to you was to keep the record as straight as possible."
We do not see where Kern had any duty or interest in replying to Hardy's letter, and therefore the failure to reply could not be taken as an admission of the truth of the statement allegedly made by him.
Hardy's letter is like that involved in H. Curjel Co. v.Hallett Mfg. Co., 198 Ala. 609, 73 So. 938 (1916), wherein one party to a contract wrote the other party:
 "No delivery having been made by you we herewith have to ask you to consider delivery of the first installment . . . as canceled."
The court characterized the letter as a declaration of cancellation, not a request, which called for no reply. Therefore, failure to answer did not support an inference that the receiving party had assented to the sending party's repudiation of the contract.
We think the rule of Fidelity Casualty Co. v. Beeland Bros.Mercantile Co., 242 Ala. 591, 7 So.2d 265 (1942), that self-serving statements in an unanswered letter cannot be treated as admitted merely because the letter was not answered, controls. Since this letter was written just prior to trial and obviously contains self-serving statements, we conclude that the trial court committed no error by excluding Hardy's August 20, 1974 letter from the jury's view.
No reversible error having been presented, the trial court's judgment is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.